FRANCIS A. GRAGG and Others v. ALEXANDER EMPEY and Others.[1]

July 31, 1908.

Nos. 15,711—(215).

**Newly Discovered Evidence.**
> The court did not abuse its discretion in denying the order for a new trial on the ground of newly discovered evidence.

Action in the district court for Dakota county to recover possession of certain premises and $1,000 for the wrongful retention thereof. The case was tried before Crosby, J., who made findings of fact and ordered judgment in favor of plaintiffs. From the judgment entered pursuant to the findings in favor of plaintiffs, and from an order denying a motion for an order vacating the judgment and amending the conclusions of law and order for judgment or for a new trial, defendants Francis L. Ware and Elma C. Ware appealed. Affirmed.

[1] Reported in 117 N. W. 421.

*Keith, Evans, Thompson & Fairchild,* for appellants.
*Morphy, Ewing & Bradford,* for respondents.

LEWIS, J.

Respondents commenced this action against appellants for the purpose of ejecting them from possession of the undivided five-sixths of a quarter section of land in Dakota county. Judgment was entered for respondents, whereupon appellants made a motion for a new trial upon the ground of newly discovered evidence.

It was conceded at the trial that respondents were the owners in fee as the surviving widow and heirs of Levi Gragg, and that appellant Francis L. Ware had acquired title to an undivided one-sixth interest from one of the Gragg heirs, not one of respondents. The alleged newly discovered evidence is set out in two affidavits—one by Mr. Thompson, the attorney who had the case in charge from its inception, and the other by Francis L. Ware. Mr. Thompson states that in preparing for and conducting the trial he depended upon the accuracy of an abstract of title furnished by the register of deeds of Dakota county; that it appeared from such abstract that no heir at law of Levi Gragg had executed any conveyance of any interest in the real estate, except the son, Levi S. Gragg, through whom appellant claimed his one-sixth interest; [that the cause was tried and submitted to the court in June, 1907] ; and that he did not know until about February 1, 1908, that Mr. Ware had discovered that respondent Matilda O'Brien, and her daughter, Mary Ellen Gragg, through whom respondents George T. Moss, Maud Moss Kirk, Minnie Moss, and Mattie Moss claim title, had executed conveyance of their interest in the real estate many years prior to the commencement of this action.

Mr. Ware states in his affidavit that he obtained the abstract of title and that it was used by his attorney in preparation of the case for trial; that since the trial it had twice been brought down to date and certified, but that it failed to show any reference to the deed or the power of attorney by means of which the deed was executed by the heirs of Levi Gragg. He states that while engaged in securing evidence for use at the trial he learned that Matilda O'Brien and Mary Ellen Gragg had in the year 1876 executed and delivered to one Richard Sharp a deed for all of their interest in the land in litigation, and that the con-

veyance was made through James Bennett as their attorney in fact. He further states that he secured the deed for the purpose of having the same admitted of record, but made no use of it at the trial, because he could find no trace of the power of attorney.

The affidavit also states that after the entry of judgment in the action Mr. Ware received "other information" which led him to believe that the power of attorney must have been filed for record, and that he went to Hastings to make search for it, and on or about February 3, 1908, discovered the record of the power of attorney in Book G of Miscellaneous Records; that this power was dated April 24, 1876, and was from Matilda O'Brien (formerly Matilda Gragg, the widow of Levi Gragg) and husband, James O'Brien, Mary Ellen Gragg, and the other Gragg children, "by which [power] said James Bennett was made, constituted, and appointed their irrevocable and true and lawful attorney for them and in their name, place, and stead, to act without any cost, charges, or expenses (except a commission agreed upon), to bargain, sell, and convey all or any of the lands or real estate belonging to or owned by them as heirs of Levi Gragg, deceased, and situated in the county of Dakota, and state of Minnesota," etc. Mr. Ware further affirms that he immediately informed his attorney that he had found a record of the power of attorney, and was advised to record the deed, executed under the power of attorney, to Sharp, and that thereupon the deed was recorded on the fourth day of February, 1908.

There are other matters set out in both the affidavits which have no bearing upon the question presented upon this appeal. The trial court denied the motion for a new trial, and we are required to determine whether under all the circumstances the court abused its discretion.

In the first instance, let it be noted that Mr. Ware never claimed any title through any of respondents, and that his only claim of title to the five-sixths interest was by adverse possession. Furthermore, it appears that the object of securing a new trial is merely for the purpose of introducing the record of the power of attorney and the deed executed thereunder by Bennett to Sharp; the purpose being to establish an outstanding title. Of course, if such title had been proven at the trial, it would have prevented respondents from recovering in an action of ejectment, appellants being in possession; and we assume it was competent for that purpose.

But we agree with the learned trial court that appellants have not only failed to excuse their negligence in not securing the information in time for the trial, but have also failed to show themselves entitled to a new trial for the purpose of using the evidence, conceding that the delay may be excused. At the most, the production of the power of attorney, and the deed in evidence would simply indicate that a man named James Bennett executed a deed in 1876 to a five-sixths interest in the real estate, under a power of attorney executed by five of the heirs and the widow. We will concede that the introduction of such power and deed in evidence would make out a prima facie case of an outstanding title in Sharp. But, the deed never having been recorded, and it not appearing that any claim was ever made to the property either by Sharp or any one under him, and it appearing that the five-sixths interest so purporting to have been conveyed by James Bennett was claimed to be owned by respondents, we are clearly of opinion that appellants were required to go further and furnish the court some reasonable ground for believing that the conveyance was a valid one. If Mr. Ware was able to find the deed and caused it to be recorded, he could also have discovered whether the deed was held by Sharp, or any one under him, in good faith claiming title thereunder. At least some explanation should have been furnished why it was that such deed was held in abeyance, never recorded, and no claim of title made under it for the period of thirty years.

Again, although the attorney was probably justified in accepting the abstract as complete evidence of the title, the client, having knowledge of the deed, should not be permitted to escape responsibility by alleging that he failed to inform his attorney. Mr. Ware states in his affidavit that in preparing for the trial he discovered the deed, but, not being able to get any trace of the power of attorney, he did not think it of sufficient importance to call it to the attention of his attorney. If Mr. Ware was intelligent enough to discover that the deed would be futile unless the power under which it was executed could also be found, he certainly cannot complain of the consequences of keeping the information to himself.

On the entire record, we are satisfied that the trial court committed no error in denying the motion for a new trial.

Affirmed.